# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

---

### 2024 ND 115

---

State of North Dakota,                                    Plaintiff and Appellee

v.

Richard Dean Anderson, Jr.,                              Defendant and Appellant

---

### No. 20230344

---

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Nicholas W. Chase, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices McEvers and Bahr joined. Justice Crothers filed a dissenting opinion.

Nicholas S. Samuelson, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Alexis L. Madlom, Fargo, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]    Richard Dean Anderson, Jr., appeals from a criminal judgment entered after he conditionally pled guilty to possession of drug paraphernalia. On appeal, he argues the district court erred in denying his motion to suppress because law enforcement did not have sufficient reasonable suspicion to expand the traffic stop into a drug investigation. We affirm.

I

[¶2]    In March 2023, shortly after midnight in the City of West Fargo, Officer Sufficool stopped Anderson for a broken tail light. Sufficool requested Anderson's driver's license, registration, and insurance. While locating these items, Anderson explained he had driven to West Fargo to shop for groceries and was heading home to Hunter. Hunter is more than 35 miles from West Fargo. Sergeant Carlson arrived at the traffic stop and approached Anderson's vehicle during Sufficool's initial contact with Anderson. Sufficool asked which grocery store Anderson had been to. With his tone of voice changing, Anderson responded, "If you want to escalate this, then I'm not answering any more questions. I just want to get home." About three minutes after the stop began, the two officers walked back to a patrol car with everything but Anderson's registration, discussing the situation and describing Anderson as "aggravated" by the question about the grocery store. The officers saw no visible groceries in the vehicle, although one acknowledged the hatchback area was not visible.

[¶3]    The two officers decided that Anderson's story was suspicious, and Sufficool called a K-9 officer. About four minutes into the stop, Anderson found and provided his registration. While Carlson retrieved the registration from Anderson, Sufficool continued his call to the K-9 Officer. During the next three minutes, Sufficool checked Anderson's vehicle registration and criminal history on his computer. About seven minutes into the stop, Sufficool summarized the criminal history check to Carlson, and indicated he should keep talking to Anderson. The K-9 Officer arrived at approximately nine minutes into the stop. Describing the situation to the K-9 officer, Sufficool explained that Anderson's most recent drug convictions were from 2020 and he had a delivery conviction in 2007. A drug sniff of the vehicle was performed, and the dog positively alerted. The officers searched Anderson's car and discovered drug paraphernalia.

1

[¶4]     Anderson moved to suppress the evidence from the search. The district court denied the motion. Anderson then entered a conditional guilty plea to possession of drug paraphernalia. Anderson appeals.

II

[¶5]     Under our standard of review,

> [T]his Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Phelps*, 2017 ND 141, ¶ 5, 896 N.W.2d 245 (quoting *State v. Knox*, 2016 ND 15, ¶ 6, 873 N.W.2d 664).

[¶6]     Both the federal and state constitutions protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV; N.D. Const. art. I, § 8.

[¶7]     A police officer's observation of a traffic violation justifies a traffic stop. *State v. Vetter*, 2019 ND 138, ¶ 6, 927 N.W.2d 435. When an officer seizes an individual driver for a traffic violation, the permissible scope of the investigation at the outset of the stop is the traffic-based purpose of the stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *State v. Marsolek*, 2021 ND 175, ¶ 9, 964 N.W.2d 730. The permissible time is limited to the time required to complete the "mission" of the stop, to "address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354. Unrelated inquiries are permitted during a stop only if they are concurrent with the stop and do not measurably extend the time the individual is detained. *Id.* at 354-55 (citing *Arizona v. Johnson*, 555 U.S. 323, 327-28 (2009), and *Illinois v. Caballes*, 543 U.S. 405, 406, 408 (2005)); *Marsolek*, at ¶ 9. A stop may be prolonged to further tasks beyond the initial scope of the investigation only if the officer has reasonable suspicion to justify detaining the individual for inquiries related to that expanded scope. *Marsolek*, at ¶ 9.

[¶8]     "During a lawfully-initiated traffic stop, the officer may conduct activities related to traffic enforcement but not absolutely necessary to issuing a traffic ticket." *Marsolek*,

2

2021 ND 175, ¶ 10 (internal quotations omitted). An officer may conduct the following activities:

> [R]equesting the driver's license and registration, requesting that the driver step out of the vehicle, requesting that the driver wait in the patrol car, conducting computer inquiries to determine the validity of the license and registration, conducting computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and making inquiries as to the motorist's destination and purpose.

*Phelps*, 2017 ND 141, ¶ 10; *Carlisle v. Commonwealth*, 601 S.W.3d 168, 179 (Ky. 2020) (concluding under *Rodriguez* that questions about travel plans and an inquiry into criminal history were within the mission of the traffic stop). Although law enforcement may engage in these permissible activities, this Court has "rejected a *de minimis* time exception for extending a traffic stop" for activity outside the mission of the stop without reasonable suspicion to support the expanded scope. *Marsolek*, 2021 ND 175, ¶ 12; *see also State v. Karst*, 509 P.3d 1148, 1156 (Idaho 2022) (concluding under *Rodriguez* that a nineteen-second detour to request a drug-dog unit violated the Fourth Amendment).

[¶9]	Under *Rodriguez*, if (1) an officer expands the scope of a traffic stop by deviating from the mission of the stop; (2) the deviation extends the stop by any measurable amount of time; and (3) the extension of time is a but-for cause leading to discovery of evidence supporting reasonable suspicion of another offense, then any evidence obtained as a result of the expanded reasonable suspicion is the result of an unlawful seizure and must be suppressed.

A

[¶10]	Anderson argues the district court erred in denying his motion to suppress, because law enforcement illegally expanded the scope of the traffic stop into a drug investigation by calling a drug dog to the scene.

[¶11]	The district court found the scope of the stop was not expanded until the Officer had conducted a background check on Anderson and found his prior criminal history.

[¶12]	When two officers are on scene and one is pursuing the mission of the traffic stop and the other is conducting an investigation not related to the traffic stop, an unlawful seizure has not occurred because the second officer's investigation is not delaying the stop. *Vetter*, 2019 ND 138, ¶ 13; *see Phelps* 2017 ND 141 (holding the defendant was not detained beyond the time reasonably necessary to complete the traffic stop when one

officer was working on the traffic citation and the other officer was performing a drug sniff). Here, the officers were walking back to the patrol vehicle when they discussed Anderson's tone change and nervous answer. After they returned to the vehicle, Anderson found his registration. Carlson walked over to retrieve the registration while Sufficool called the K-9 Officer. The next three minutes spent checking Anderson's vehicle registration and criminal history were within the mission of the stop. It was at that point the officers learned of Anderson's drug convictions.

[¶13] We agree with the district court that the scope of the stop did not expand until after the discovery of the criminal history, because up to that point an officer was diligently and continuously pursuing the mission of the traffic stop. Until the officers learned of Anderson's criminal history, the actions taken were within the permissible scope of the traffic stop. After learning of the drug convictions, the evidence does not indicate that the officers continued to pursue the traffic stop. No citation was issued. The district court found the focus at that point was a drug investigation. The Officer had Anderson's license and registration and completed a background check, so the only part of the traffic stop remaining was to issue a traffic citation. But the Officer and Sergeant waited for the K-9 Officer. This Court has rejected a *de minimis* time exception for extending a traffic stop; the officers must have had reasonable suspicion to support extending the traffic stop and starting the new investigation. *Marsolek*, 2021 ND 175, ¶ 12.

B

[¶14] Anderson argues the officers did not have reasonable suspicion to expand the scope of the stop to perform a drug investigation.

[¶15] The district court found that after the completion of the criminal background check, several factors were present that created a reasonable suspicion of criminal activity. Specifically, the court found: 1) it was after midnight; 2) Anderson claimed he was grocery shopping, but the officers believed most area grocery stores closed before midnight; 3) the officers did not see any groceries in the vehicle; 4) Anderson became aggravated when asked where he had shopped; and 5) Anderson had prior drug convictions.

[¶16] This Court looks to the totality of the circumstances while applying an objective standard to determine whether reasonable suspicion exists to justify prolonging a traffic stop. *State v. Cook*, 2020 ND 69, ¶ 16, 940 N.W.2d 605. "Whether the facts support a finding of reasonable articulable suspicion is a question of law, and thus, is fully reviewable by this Court." *State v. Adan*, 2016 ND 215, ¶ 9, 886 N.W.2d 841. The question for this

4

Court is "whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity." *State v. Franzen*, 2010 ND 244, ¶ 12, 792 N.W.2d 533. Reasonable suspicion is not easily reduced to a methodical set of legal rules, but it does require more than a "mere hunch." *State v. Fields*, 2003 ND 81, ¶ 13, 662 N.W.2d 242.

[¶17]  Regarding the first factor, it was a little after midnight. "The lateness of the hour is [a] fact that may raise the level of suspicion." *Fields*, 2003 ND 81, ¶ 20 (quoting *United States v. Lender*, 985 F.2d 151, 154 (4th Cir.1993)). This factor by itself does not establish a reasonable suspicion, but it may be considered in the totality of the circumstances.

[¶18]  Second, when asked, Anderson claimed he was grocery shopping but provided no details. An incomplete story or unusual detail about a person's travel and destination is a relevant factor when determining whether reasonable suspicion exists. *See State v. Deviley*, 2011 ND 182, ¶ 12, 803 N.W.2d 561. The officers determined Anderson's story was suspicious because most area grocery stores are no longer open late at night.

[¶19]  Third, the officers did not see any groceries in the front area of the vehicle. The potential absence of items in a vehicle may indicate inconsistencies in an individual's answer to questions and aid officers in determining the veracity of an individual's story. *See Adan*, 2016 ND 215, ¶ 20; *see also U.S. v. Simpson*, 609 F.3d 1140, 1149 (10th Cir. 2010) (explaining "lies, evasions or inconsistencies about any subject while being detained may contribute to reasonable suspicion"). To establish reasonable suspicion, an officer need not rule out all potential innocent reasons. *See State v. Bolme*, 2020 ND 255, ¶ 8, 952 N.W.2d 75. Here, the officers considered that there were no visible groceries in the front part of the vehicle to help corroborate the story.

[¶20]  The fourth factor was Anderson's sudden change in tone. The officers noticed he started out relaxed during first contact, but Anderson's demeanor changed when asked where he had been grocery shopping. While nervousness or evasiveness alone is not sufficient to establish reasonable suspicion, they are pertinent factors in determining reasonable suspicion. *Adan*, 2016 ND 215, ¶ 15. Unlike *Fields*, where the defendant was nervous during the stop, 2003 ND 81, ¶ 19, Anderson started out sounding comfortable and cooperative until specifically asked which grocery store he had shopped at; then he became evasive and aggravated.

[¶21]  The fifth factor considered was the prior drug convictions. Prior drug convictions are not sufficient to create reasonable suspicion that criminal activity is afoot, but in

5

combination with other factors, "a person's criminal history can support a finding of reasonable suspicion." *State v. Wills*, 2019 ND 176, ¶ 16, 930 N.W.2d 77. Here a search revealed Anderson had drug convictions, including one from 2020. Unlike *Cook*, 2020 ND 69, ¶ 17, where the officer's knowledge of a prior drug conviction was the officer's only factor for reasonable suspicion, officers here considered the convictions in combination with the other factors when developing reasonable suspicion that unlawful activity was afoot.

[¶22] In conclusion, no Fourth Amendment violation occurred. Under the totality of the circumstances, the officers had reasonable and articulable suspicion to justify detaining Anderson for a drug related inquiry after they learned of the drug convictions and apparently stopped pursuing the mission of the traffic stop.

### III

[¶23] We affirm the criminal judgment.

[¶24] Jon J. Jensen, C.J.
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

**Crothers, Justice, dissenting.**

[¶25] The single question in this case is whether law enforcement extended Anderson's traffic stop to conduct a drug investigation in violation of the Fourth Amendment to the United States Constitution, or art. I, § 8 of the North Dakota Constitution. The district court and the majority say Anderson's prolonged detention and subsequent search was constitutionally permissible. I respectfully disagree.

### I

[¶26] This case involves general suspicion about questionable driver behavior. It also involves good police work, right up until they seized Anderson based on that general suspicion. In cases like this I expect courts will err on the side of protecting the constitutional right at stake, and not default to a position of affirming a violation as I believe occurs here. *See State v. Hilleshiem*, 291 N.W.2d 314, 316 (Iowa 1980) ("The essential

6

purpose of the fourth amendment search and seizure proscriptions is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement officials, in order to safeguard the privacy and security of individuals against arbitrary invasions."); *Crain v. State,* 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (To conduct investigative detentions, law enforcement "must have reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. Articulable facts must amount to more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress.") (cleaned up).

[¶27]  We agree that traffic violations justify seizure of a driver to "complete the mission of the stop," and that a "stop prolonged beyond the 'time reasonably required to complete the stop's mission' is unlawful." Majority opinion, ¶ 7. Extending the stop beyond the time required to complete that mission requires reasonable articulable suspicion of a different lawful reason to seize a person. *Id.* "This Court has rejected a *de minimis* time exception for extending a traffic stop; the Officers must have had reasonable suspicion to support extending the traffic stop and starting the new investigation. *Marsolek*, 2021 ND 175, ¶ 12." *Id.* at ¶ 12. To prolong a lawful stop an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Therefore, extended detention is not permitted based on a "mere hunch," *State v. Wills*, 2019 ND 176, ¶ 9, 930 N.W.2d 77, which is what I believe happened to Anderson.

[¶28]  Here, the district court found, and we all agree, the initial traffic stop was justified due to a broken tail light. The court found, and we accept on appeal, that the scope of the stop beyond a traffic violation was expanded when Anderson's background check revealed drug convictions in 2020 and 2007. Majority opinion, ¶¶ 3, 12. Importantly, "After learning of the drug convictions, the evidence does not indicate that the officers continued to pursue the traffic stop." *Id.* at ¶ 12. Therefore, the result in this case depends on what the officers knew when they prolonged Anderson's seizure by discontinuing work on the traffic violation and pursuing a criminal investigation. Specific focus must be on whether the information known to the officers at that time objectively provided them with reasonable articulable suspicion of a violation different than what permitted the traffic stop. *State v. Adan*, 2016 ND 215, ¶ 12, 886 N.W.2d 841 ("The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity."). While we defer to a

7

district court's findings of fact, "[w]hether the facts support a finding of reasonable articulable suspicion is a question of law, and thus, is fully reviewable by this Court." *Id.* at ¶ 9.

[¶29] The district court summarized its findings and analysis as follows:

> In summary, there were a number of factors in this case that created reasonable suspicion of further criminal activity. Starting with the baseline considerations that Anderson had prior drug related convictions and that it was near midnight. More significantly, law enforcement relied on several factors that overlapped on the same issue: Anderson's statement that he was in the area purchasing groceries. Stores selling groceries are generally not open in the area (though there are exceptions), there were no groceries in the passenger compartment of an otherwise empty vehicle, and Anderson became aggravated when asked where he had purchased groceries. Based on Officer Carlson's experience in conducting traffic stops, he characterized Anderson's response as "peculiar" and that it appeared Anderson "did not like that question." The officers very reasonably concluded that Anderson was evasive in that he was not telling the truth.

### A

[¶30] The district court found two "baseline considerations." The first was that Anderson has a criminal history. The majority acknowledges and I agree "a person's criminal history can support a finding of reasonable suspicion." Majority opinion, ¶ 20 (citing *Wills*, 2019 ND 176, ¶ 16). However, "[k]nowledge of a person's criminal history by itself is not enough to support a finding of reasonable suspicion." *State v. Cook*, 2020 ND 69, ¶ 17, 940 N.W.2d 605 (citing *State v. Fields*, 2003 ND 81, ¶ 15, 662 N.W.2d 242). Therefore, Anderson's criminal history could *support* building reasonable articulable suspicion, but only if coupled with other legally sufficient information. As I more fully explain below, I believe Anderson's criminal history was the only information supporting reasonable articulable suspicion. Without more, the extension of Anderson's seizure violated the Fourth Amendment.

### B

[¶31] The district court's second "baseline" support for reasonable articulable suspicion was that Anderson was stopped "near midnight." The court specifically found Anderson was driving a "small sports utility vehicle," and was stopped at 12:09 a.m. for a broken tail light. Importantly for our analysis, "the time of day" was not attached to any other problem or suspicious activity. Anderson was not speeding. He was not driving erratically. He was

8

not in the vicinity of reported criminal activity. Nobody, including law enforcement, observed Anderson do anything other than drive with a broken tail light.

[¶32] The "time of day" factor cannot be viewed in isolation, but must be coupled with other facts, circumstances, or conduct that make a citizen's activity or presence—at that time of day—out of the ordinary. *Crain*, 315 S.W.3d at 53 ("Neither time of day nor level of criminal activity in an area are suspicious in and of themselves; the two are merely factors to be considered in making a determination of reasonable suspicion."); *State v. Haviland*, 532 N.W.2d 767, 769 (Iowa 1995) (Officer "was not investigating a crime or responding to an 'in-process' crime; he had no information respecting the car or its occupants; he had not been informed of any recent suspicious activities in that area; the area was not a particularly 'high crime' spot; [officer] observed Haviland's vehicle for a very short time during which the vehicle did not behave erratically or illegally; and 12:30 a.m. on a Friday night/Saturday morning is not an unreasonable time to be out and about. *See Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir. 1992); *United States v. Nicholas*, 448 F.2d 622, 624-25 (8th Cir. 1971); *State v. Cooley*, 229 N.W.2d 755, 761 (Iowa 1975); *State v. Varvel*, 436 N.W.2d 649, 651 (Iowa App. 1988); *State v. Losee*, 353 N.W.2d 876, 878-79 (Iowa App. 1984).").

[¶33] Additionally, North Dakota has a long history of cases where time of day, even when coupled with other concerns, was insufficient to support a determination of reasonable articulable suspicion to seize a driver. *See, e.g., Johnson v. Sprynczynatyk*, 2006 ND 137, ¶¶ 1-2, 717 N.W.2d 586 (no reasonable articulable suspicion to stop car at 12:34 a.m. traveling 8 to 10 miles per hour in residential area with a 25 mile per hour speed limit); *State v. Smith*, 2005 ND 21, ¶¶ 1-2, 22, 691 N.W.2d 203 (no reasonable articulable suspicion to stop vehicle seen quickly pulling out from behind bulk fuel tanks at 12:30 a.m. near where burglaries occurred "in recent years"); *State v. Robertsdahl*, 512 N.W.2d 427, 428 (N.D. 1994) (Deputy Sheriff's unfamiliarity with vehicle, his knowledge of past burglaries in the county, and the vehicle's location in the vicinity of a liquor store after hours amount to no more than a "'vague hunch' of illegal activity"); *State v. Sarhegyi*, 492 N.W.2d 284, 286 (N.D. 1992) ("The only [basis] for [officer's] suspicions were the time of night, the burglary possibilities, the safety of the occupant, if the car was stolen, if someone needed assistance, and the fact that Sarhegyi began to pull away from [the officer] as he entered the lot."). All those justifications were insufficient basis for reasonable suspicion. *See also People v. Medina*, 1 Cal. Rptr. 3d 546, 551 ("Because the decision to restrain Medina's hands and search him was based solely on his presence in a high crime area late at night, both the detention and search were unlawful.").

[¶34]  Here, Anderson was stopped around midnight for a broken tail light. The time of day neither augmented nor detracted from the reason for the stop. Put bluntly, the time of day had nothing to do with the reason for the stop because the device is not more broken or less broken at midnight than during any other time of day.

[¶35]  When time of day is looked at from the standpoint of potentially adding suspicion to extend Anderson's seizure, driving at midnight—without more—provides no evidence of reasonable or articulable suspicion. Perhaps officers are motivated to stop drivers at night for minor traffic violations because, on a general basis, they might believe illegal activity is more prevalent. However, such a belief, even based on generally observed human behavior, is not reasonable articulable suspicion that a particular person may be engaged in criminal conduct. Further, here the officers attached no other facts or activity to Anderson being on the road at midnight. Rather, the officers, the district court, and the majority rely on the time of day alone as a factor supporting reasonable articulable suspicion. I disagree it is reasonable to attach such import to the singular conduct of driving at midnight.

[¶36]  Finally, the district court called the first two so-called "factors," "baseline considerations." I am unsure why the court seemingly attached more significance to those "factors" than it did to the other circumstances it relied on for its ruling. Similarly, I hope the majority is not suggesting the Fourth Amendment permits the extended seizure of any driver who has a criminal conviction and is stopped for a traffic violation after midnight. We rejected that combination in *State v. Fields*, 2003 ND 81, ¶ 21, 662 N.W.2d 242 (rejecting as reasonable articulable suspicion that Fields had a criminal record and was driving at 3:24 a.m.). We should reject it again here.

C

[¶37]  The district court next considered the purported implausibility of Anderson's statement he was grocery shopping (described by the court as "Anderson's alleged midnight outing to obtain groceries in the Fargo/West Fargo area."). Again, under the fact and circumstances here, the entire topic of groceries amounts to nothing more than "inchoate and unparticularized suspicion or hunch." *Sokolow*, 490 U.S. at 7.

[¶38]  First, the claim that grocery shopping late at night constituted reasonable articulable suspicion was outright rejected in *Fields*, 2003 ND 81, ¶¶ 3, 20 (rejecting as reasonable articulable suspicion that Fields said he was out at 3:24 a.m. to buy milk and cereal for breakfast); *see State v. Byrd*, 2022- Ohio-4635, ¶ 27, 204 N.E.3d 681 (Officer's suspicion

10

was based on defendant's nervousness and the account of her travels, which did not make sense to him. "These observations at best support an inchoate and unparticularized hunch that criminal activity might be afoot. However, they do not constitute specific facts to support a reasonable suspicion justifying an officer extending a traffic stop so that a canine could confirm or dispel the officer's suspicion about illegal drug or gun activity.").

[¶39]   Second, both the district court and the majority gloss over the precise exchange. The officer asked Anderson, "Are you just in town working or what are you doing?" Anderson replied, "Ah, no, I am just going home, actually. I went to get some groceries." Anderson did not say he was grocery shopping in West Fargo, where he was stopped. Rather, he broadly stated he "went to get some groceries."

[¶40]   The traffic stop was in West Fargo, which is part of the Fargo-Moorhead metropolitan area. An officer testified that "most" grocery stores were closed at that time. The district court acknowledged his further testimony that "maybe there is one supermarket open late at night and that truck stops sell some groceries twenty-four hours a day." That concession, coupled with the holding in *Fields* that shopping at night is "innocent behavior" that people engaged in due to "work or other reasons," provides no support of reasonable articulable suspicion that Anderson was engaged in identifiable criminal activity. Indeed, if Anderson's claim of buying groceries is afforded any weight, I submit that weight favors continued adherence to *Fields* because people obtaining goods in a larger city before returning to a smaller home town is a known economic reality that rural merchants have battled for years.

[¶41]   For the district court, the implausibility of Anderson's grocery shopping statement was bolstered by the officers' inability to see groceries in Anderson's car. However, close attention to the court's words reveals that what it said was "such a story could be seemingly innocent" but the officers "did not see any groceries, and therefore Anderson began to garner suspicion." Plainly put, the officers had a hunch. The lack of visible groceries "garnered" their suspicion. Later in the court's order it again noted the weak nature of this information by finding, "Though neither officer could see into the hatchback portion of Anderson's vehicle, the officers' observations of no groceries was a factor in doubting Anderson's story about what he was doing." Again, this is at best inchoate or unparticularized suspicion that does not support or permit a person's extended seizure.

[¶42]   The majority does not follow the district court's lead and examine the grocery store visit and the lack of visible groceries as one "factor;" instead making them two considerations by the officers. Majority opinion, ¶¶ 17-18. I disagree the officers thought

11

shopping for, and having, groceries were separate justifications for detaining Anderson. But even if they were, I disagree with the majority's analysis.

[¶43] The majority's topic sentence on this point states "Anderson claimed he was grocery shopping but provided no details." Majority opinion, ¶ 17. As to grocery shopping, *Fields* should end that discussion. As to Anderson not providing details, I discuss below that Anderson had no obligation to chit-chat with officers about anything but the reason for his stop. *See State v. Genre*, 2006 ND 77, ¶ 26, 712 N.W.2d 624 ("During a traffic stop, a driver should reasonably expect to answer common sense investigatory questions; questioning during a traffic stop does not become a custodial interrogation simply because the officer asks a question that may establish an element of a crime."). Therefore, despite the officers' significant, deliberate, efforts to engage Anderson in conversation about his whereabouts, Anderson's lack of effusive detail about his evening may have piqued the officers' curiosity but it was not evidence in support of extending his seizure.

[¶44] The majority also states "[a]n incomplete story or unusual detail about a person's travel and destination is a relevant factor when determining if reasonable suspicion exists." Majority opinion, ¶ 17. They cite *State v. Deviley*, 2011 ND 182, 803 N.W.2d 561, where the targets of investigation were two interstate travelers claiming to be friends who did not agree how they came to be traveling together or whether they were going to Minnesota or Wisconsin. *Id.* at ¶¶ 2-3. Here, as explained above and below, stores at which groceries could be purchased were open in the Fargo-Moorhead-West Fargo area, and the story was "incomplete" because Anderson chose as he was permitted to do and did not further talk with the officers about his whereabouts.

D

[¶45] The district court also considered what it called "Anderson's behavior change[ ] from cooperative and polite to uncooperative and somewhat aggravated." To be clear, we are talking about one sentence: "If you want to escalate this, then I'm not answering any more questions." Majority opinion, ¶ 2. I note that Anderson's next sentence was "I just want to get home." *Id.*

[¶46] The district court and the majority attach significance to Anderson's changed attitude during questioning. The court noted that one officer, "based on his experience in conducting traffic stops, characterized Anderson's response as 'peculiar' and that it appeared Anderson 'did not like that question.'" First, an officer's unspecific invocation of "experience" should be of no evidentiary value. *See State v. Cook*, 161 P.3d 779, 783-86

12

(Kan. Ct. App. 2007) (Greene, J., dissenting). Rather, an officer's claim of inferences drawn from a claim of training or experience cannot be a bald assertion but must have a foundation in the evidence. *U.S. v. Gaytan-Martinez*, 1997 WL 345759 *1 (9th Cir.) ("Reasonable suspicion must consist of specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity. In analyzing whether a given set of facts established reasonable suspicion, we must consider the totality of circumstances surrounding the investigatory stop of Defendant's vehicle. Facts are to be interpreted in the light of a trained officer's experience, but permissible deductions or rational inferences must be grounded in objective facts and be capable of rational explanation.") (cleaned up). Second, even if factually supported, here the officer's conclusion was again an inchoate and unparticularized feeling that Anderson's story "did not add up." Of course, that is not the making of reasonable articulable suspicion allowing a person's prolonged seizure.

[¶47] For its part, the majority attaches significance to the fact Anderson "started out relaxed during first contact, but Anderson's demeanor changed when asked where he had been grocery shopping." Majority opinion, ¶ 19. In *Fields* the driver was described as "very nervous during the stop." 2003 ND 81, ¶ 19. There, this Court held "nervousness alone is not enough to establish a reasonable and articulable suspicion." *Id*. The majority attempts to distinguish the holding in *Fields* because here "Anderson started out sounding comfortable and cooperative until specifically asked which grocery store he had shopped at; then he became evasive and aggravated." Majority opinion, ¶ 19. I cannot agree with the majority's thinking.

[¶48] On practical grounds, I believe it is completely normal that a driver, 35 miles from home, detained on a roadside during a cold and snowy winter night would express irritation at being questioned by a police officer about his personal information wholly unrelated to a broken tail light. Indeed, the video of the encounter shows that the officer did not immediately express surprise at Anderson's response. Nor did he press the question. Instead, without pause the officer returned to processing the traffic stop.

[¶49] Beyond practical grounds, the law supports both Anderson's decision to not chat with the officers about unrelated matters, and the officers' inability to use that silence as a circumstance justifying furtherance of their unrelated investigation. *See Commonwealth v. $17,182.00 U.S. Currency*, 42 A.3d 1217, n.6 (Pa. 2012) ("a person stopped for a traffic violation has no obligation to respond to any question posed by an officer apart from a request to produce a driver's license, registration and proof of insurance"). Moreover,

13

"Failure to give an explanation when none is required cannot be construed as evidence of wrong-doing." *Id*. (citing *Commonwealth v. Fontanez*, 559 Pa. 92, 96, 739 A.2d 152, 154 (1999)). Therefore, Anderson had no obligation to respond to the officers' questions beyond those germane to the traffic stop, and the fact of his refusal would be inappropriate use of his constitutional right to remain silent.

[¶50]  If a driver has the right to not engage in a wide-ranging, or even an incriminating conversation, I believe it follows that the State cannot use the driver's silence as suspicion of hiding criminal activity. An apt comparison would be where a driver refuses to permit a search of the vehicle. In that circumstance, the refusal cannot become the basis for articulable suspicion to seize the driver. *United States v. Santos*, 403 F.3d 1120, 1125-1126 (10th Cir. 2005) ("A refusal to consent to a search cannot itself form the basis for reasonable suspicion: 'it should go without saying that consideration of such a refusal would violate the Fourth Amendment.'") (quoting *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997)). "If refusal of consent were a basis for reasonable suspicion, nothing would be left of Fourth Amendment protections." *Santos*, 403 F.3d at 1126.

E

[¶51]  Finally, because of its holding the majority does not reach the ultimate point of Anderson's appeal—that he was seized beyond when the business of the traffic stop was or should have been resolved.

[¶52]  The district court's chronology shows Anderson was stopped at 12:09 a.m. He immediately produced his driver's license and proof of insurance, but could not locate the vehicle registration. Anderson found the registration and provided it to one of the officers at 3 minutes, 55 seconds into the stop. The officer with a drug dog was called about the same time as the registration was found. The video is silent until 4 minutes, 32 seconds into the stop when an officer obtained a registration verification. The recording is then silent until 7 minutes, 2 seconds after the stop when Anderson's criminal history is obtained by an officer. After the registration and criminal histories were obtained, the first officer told the other officer "to go ahead and keep talking to Anderson, explaining that Anderson has a criminal history, with a couple of methamphetamine convictions, including a delivery conviction." At nine minutes after the stop, the K-9 arrived and his handler began talking to the first officer about Anderson's history and claim he was grocery shopping. At 10 minutes after the stop, the second officer who had been talking to Anderson reports to the first officer that Anderson does not want to talk and just wants to go home. Soon thereafter,

14

three officers approach Anderson and at 11 minutes, 40 seconds after the stop they remove Anderson from his car and handcuff him.

[¶53] In *State v. Vetter* we held:

> A traffic stop prolonged beyond the "time reasonably required to complete the stop's mission" is unlawful. Unrelated inquiries are permitted during a stop as long as they do not prolong the stop and extend the time the individual is detained. A stop may be prolonged only if the officer has reasonable suspicion to justify detaining the individual for inquiries unrelated to the stop.

2019 ND 138, ¶ 6, 927 N.W.2d 435.

[¶54] The district court's chronology and the information taken from the police dash camera established that within four minutes after the stop officers had everything from Anderson they needed to complete the business of the traffic stop. These same sources establish the officers had all the information they needed for the traffic stop when the registration verification came back at 4 minutes, 32 seconds after the stop. At this point, the officers could have and should have completed their work on the traffic stop. But they did not. Instead, they turned all their efforts to pursuing an unspecified hunch Anderson might be involved in other misconduct.

[¶55] Sometime after verifying the vehicle registration the first officer checked Anderson's criminal history. The result of that check was received at 7 minutes, 2 seconds after the stop. No outstanding warrants were discovered and, as was established above, Anderson's criminal history did not provide reasonable articulable suspicion to extend his seizure. Yet from the four minute mark, and certainly from the seven minute mark, the officers did nothing to further the traffic stop and focused only on a separate investigation. That detour continued unabated until more than 11 minutes after the stop when they removed Anderson from his car and handcuffed him. It is this four to seven minute seizure that violated the Fourth Amendment.

[¶56] I respectfully submit that the law and these facts do not support a conclusion that Anderson was lawfully detained after the business of the traffic stop should have been completed. Rather, the officers made unrelated inquiries long after when the stop should have ended and, as a result unlawfully prolonged the stop and extended the time Anderson was seized because they did not possess reasonable suspicion to justify their actions. I

15

would reverse the district court's order denying Anderson's motion to suppress and remand to provide him with the opportunity to withdraw his conditional guilty plea.

[¶57] Daniel J. Crothers